**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Florodora, Inc., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 19 CV 5617 |
| Claris International Inc., | ) ) | Judge John Robert Blakey |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Florodora, Inc., a Chicago boutique, brings a putative class action against software manufacturer Defendant Claris International, Inc., alleging that Defendant violated Illinois law by charging it and other class members an Illinois retail tax on software licenses. Defendant moves to dismiss. [27]. For the following reasons, this Court grants Defendant's motion and dismisses this case with prejudice.

**I.    The Complaint's Allegations**

**A.    The Parties**

Plaintiff operates a vintage-inspired boutique in Chicago offering contemporary fashion and shoes for women, as well as unusual gifts, accessories, and home accents. [26] at ¶ 1. Plaintiff and other potential class members all licensed the Filemaker Pro software. *Id.*

Defendant, a wholly-owned subsidiary of Apple, Inc., designs, sells, and licenses the Filemaker Pro software. *Id.* ¶¶ at 1, 14. Filemaker Pro constitutes a cross-platform database application program that allows users to organize data into

1

screens, layouts, or forms, and manage contacts and projects. *Id.* at ¶ 15. Users can obtain Filemaker Pro by purchasing it directly or by obtaining a license in canned format, meaning that Defendant or a retailer sells the software as a mass-produced, prepackaged, mass-marketed product. *Id.* at ¶¶ 2, 18. Plaintiff licensed the canned software from Defendant through Defendant's annual volume license agreement program pursuant to a written contract (the AVLA). *Id.* at ¶ 19.

### B. Plaintiff's License

When a licensee enters into an AVLA, it must input verifying information specific to its business; the representative inputting this information must additionally certify that he or she possesses authorization to accept the AVLA on behalf of the licensee. *Id.* at ¶ 24. Defendant maintains a process by which it confirms the customer's license at the time of the initial order and at each subsequent renewal. *Id.*

On December 20, 2013, Plaintiff entered into a one-year AVLA with Defendant for a canned version of the Filemaker Pro; at that time, Defendant assessed, and Plaintiff paid, a sales tax. *Id.* at ¶ 29. Plaintiff claims it electronically signed the AVLA using Defendant's "eAccept" procedure. *Id.* Plaintiff subsequently renewed its license to use the Filemaker Pro software in 2014 and 2016, and then again on December 23, 2018, at which time Defendant again assessed a sales tax. *Id.* at ¶¶ 30, 31.

In March 2019, Plaintiff contacted Defendant, explaining that it believed that its license was exempt from the Illinois sales tax under the terms of the AVLA and

governing law. *Id.* at ¶ 32. In response, a representative for Defendant informed Plaintiff that it needed to pay the sales tax to continue licensing the Filemaker Pro; as a result, Plaintiff ultimately paid a sales tax on the December 2018 transaction. *Id.* at ¶ 33.

### D. Plaintiff's Claims

Plaintiff alleges that Defendant violated Illinois law by assessing it a sales tax on Plaintiff's initial license and subsequent renewal[1]. *Id.* at ¶ 34. Plaintiff brings a six-count complaint alleging: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count I); (2) misappropriation and conversion (Count II); (3) breach of constructive trust (Count III); (4) unjust enrichment (Count IV); (5) breach of contract (Count V); and breach of the covenant of good faith and fair dealing (Count VI). *Id.* at ¶¶ 42–94.[2]

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also

---

[1] The first amended complaint remains unclear as to whether Plaintiff paid the tax on each renewal or just on the December 2018 renewal.

[2] Plaintiff alleges that this Court retains original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the states in which Defendant is a citizen and in which this case is filed.

contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

**III.     Analysis**

Defendant moves to dismiss Plaintiff's first amended complaint in its entirety, arguing, among other things, that Plaintiff fails to plausibly allege any harm. [28] at 7–8. This Court agrees, and as more fully explained below, the interplay between Illinois and Chicago tax laws bars Plaintiff from recovery. Before turning to the merits, this Court first provides an outline of the Illinois and Chicago tax schemes relevant to this case.

4

### A. The Illinois Tax

Illinois law requires retailers like Defendant to collect sales tax from goods they sell and remit the collected tax to the Illinois Department of Revenue (IDOR). 86 Ill. Admin. Code § 130.101(d); *Kean v. Wal-Mart Stores, Inc.*, 919 N.E.2d 926, 932 (Ill. 2009). Licensed software constitutes a taxable good unless it satisfies a five-part exemption test under 86 Ill. Admin. Code § 130.1935. Specifically, Regulation 130.1935 provides:

> A license of software is not a taxable retail sale if:
>
> A) it is evidenced by a written agreement signed by the licensor and the customer;
> B) it restricts the customer's duplication and use of the software;
> C) it prohibits the customer from licensing, sublicensing or transferring the software to a third party (except to a related party) without the permission and continued control of the licensor;
> D) the licensor has a policy of providing another copy at minimal or no charge if the customer loses or damages the software, or of permitting the licensee to make and keep an archival copy, and such policy is either stated in the license agreement, supported by the licensor's books and records, or supported by a notarized statement made under penalties of perjury by the licensor; and
> E) the customer must destroy or return all copies of the software to the licensor at the end of the license period. This provision is deemed to be met, in the case of a perpetual license, without being set forth in the license agreement.

*Id.* § 130.1935(a)(1).

### B. The Chicago Tax

The City of Chicago Personal Property Lease Transaction Tax Ordinance levies a tax on "the lease or rental in the city of personal property." Chicago Mun. Code § 3-32-030(A). The "incidence of the tax and the obligation to pay the tax are upon the lessee of the personal property." *Id.* Moreover, even if a "lessor fails to collect the tax

. . . then the lessee shall file a return and pay the tax directly to the department." *Id.* § 3-32-080(B). The Chicago tax "is imposed in addition to all other taxes imposed by the City of Chicago, the State of Illinois or any other municipal corporation or political subdivision of the State of Illinois." *Id.* § 3-32-010.

The City's Department of Finance has released guidance on this ordinance, advising that "a transfer of software that meets the five-part test set forth in 86 Illinois Administrative Code Section 130.1935 is a lease, subject to the lease tax." Personal Property Lease Transaction Tax Ruling #5, City of Chicago Dept of Finance, effective Sept. 1, 2013, available at https://www.chicago.gov/content/dam/city/depts/rev/supp_info/TaxRulingsandRegulations/TransactionTaxRuling5912013.pdf (Tax Ruling #5). Accordingly, if someone obtains a software license in Chicago, and that license is subject to an Illinois sales tax exemption under Regulation 130.1395, then he or she must pay the Chicago tax.

### C. Plaintiff Cannot Show Harm

Turning to the merits, each of Plaintiff's claims alleges harm stemming from a single wrong: the alleged improper assessment of the Illinois tax. [26] at ¶¶ 48, 60, 70, 75, 82, 91. The interplay between the Illinois tax and Chicago tax, however, demonstrates the implausibility of Plaintiff's harm based upon its allegations.

More specifically, Plaintiff's theory of recovery rests upon the premise that its purchase and subsequent renewals of the AVLA satisfy the five-part exemption test under Regulation 130.1395, and thus Defendant should never have assessed the Illinois tax. [29] at 2–7. For its part, Defendant counters that Plaintiff fails to

establish the applicability of the exemption, and specifically, the first prong of the test—that the license "is evidenced by a written agreement signed by the licensor and the customer"—because neither it nor Plaintiff signed the AVLA. [28] at 5–7.

Although the parties spend considerable energy disputing the applicability of the Illinois exemption, this Court need not rule on this point (or otherwise address any disputed issues of fact), because Plaintiff's claims are flawed either way. If Defendant is correct that the exemption does not apply, then Defendant properly assessed the tax. In that case, because Plaintiff's claims all rest upon the assertion that Defendant illegally assessed the tax, they must all fail for failure to plausibly plead harm (or, for that matter, liability).

Conversely, if Plaintiff is correct that its license is exempt from the Illinois tax, then the Chicago tax applies. *See* Chicago Mun. Code § 3-32-030(A) (the City levies a tax on "the lease or rental in the city of personal property."); Tax Ruling #5 ("a transfer of software that meets the five-part test set forth in 86 Illinois Administrative Code Section 130.1935 is a lease, subject to the lease tax."). Importantly, the Chicago tax rate is 9%, Chicago Mun. Code § 3-32-030(B), whereas the Illinois tax rate is lower at 6.25%, 35 ILCS 120/2-10, 105/3-10. Thus, even assuming Plaintiff can establish that the Illinois exemption applies, Plaintiff cannot show it suffered harm because it would have had to pay the higher Chicago tax but for Defendant's assessment of the lower Illinois tax.

Hoping to avoid this result, Plaintiff argues that, to the extent the Chicago tax applies, Defendant maintains sole responsibility for that tax if it failed to collect it

7

from Plaintiff. [29] at 7–8. Not so. The Chicago Municipal Code makes clear that even if a "lessor fails to collect the tax . . . then the lessee shall file a return and pay the tax directly to the department." Chicago Mun. Code § 3-32-030(A). Accordingly, Plaintiff remains on the hook to pay the Chicago tax directly to the City, even if Defendant failed to collect it. Regardless, under no circumstances would Plaintiff be exempt from both taxes; thus, its claim legally boils down to alleging that Defendant caused it to pay the lesser of two possible tax rates.

Plaintiff also contends that it suffered noneconomic harm from the "inconvenience and annoyance attendant to attempting to dispute the application of the tax" with Defendant. [29] at 9; [26] at ¶ 36. This argument similarly fails. As explained above, if the Illinois tax applies, Defendant did not cause Plaintiff any harm at all. And if the Chicago tax applies, Plaintiff could not have suffered "inconvenience" and "annoyance" by disputing the application of Illinois tax when it ultimately avoided paying the *higher* Chicago tax rate. In other words, this Court simply finds implausible that Plaintiff could have suffered any harm, much less noneconomic harm, from receiving a windfall (regarding a tax ultimately due in any event).

In short, because Plaintiff fails to plausibly plead that it suffered harm, its first amended complaint fails in its entirety. For example, Counts I and V fail for lack of damages. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (a plaintiff must plead actual damages to state an ICFA claim); *In re Illinois Bell Tel. Link-Up II,* 994 N.E.2d 553, 558 (Ill. App. Ct. 2013) (recognizing damages as

8

an "essential element" of a breach of contract claim).[3] Counts III and IV similarly fail because Plaintiff fails to plausibly allege it suffered a detriment giving rise to Defendant's unjust enrichment. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (to support an unjust enrichment claim, "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment"); *Kurtz v. Solomon*, 656 N.E.2d 184, 191 (Ill. App. Ct. 1995) ("A constructive trust is an equitable remedy imposed to rectify unjust enrichment."). Finally, conversion (Count II) requires, among other elements, that "defendant wrongfully assumed control of the plaintiff's property," *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 806 (Ill. App. Ct 1998); yet Plaintiff cannot plausibly allege that Defendant's assessment of a lower tax constituted a wrongful assumption of control.

---

[3] Plaintiff also brings a cause of action for breach of the implied covenant of good faith and fair dealing (Count VI). Such a "claim," however, does not constitute an independent cause of action; rather, the obligation of good faith and fair dealing "is used as an aid in construing a contract under Illinois law." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013).

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss [27] and dismisses the first amended complaint [26] with prejudice, because any potential amendment remains futile based upon the record. The Clerk is directed to enter a final judgment of dismissal. All dates and deadlines are stricken. Civil case terminated.

Dated: May 13, 2020

Entered:

_____
John Robert Blakey
United States District Judge